UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| IN RE THE APPLICATION OF )<br>ROQUE JACINTO FERNANDEZ, )<br>)<br>Petitioner, )<br>)<br>vs. )<br>)<br>CHRISTY NICOLE BAILEY, )<br>)<br>Respondent. ) | Case No. 1:10CV00084 SNLJ |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant's motion to dismiss, #15, filed June 28, 2010. Responsive pleadings have been filed and this matter is ripe for disposition.

### I. Statement of the Case

Petitioner Roque Jacinto Fernandez is a citizen of Panama and respondent Christy Nicole Bailey is a citizen of the United States. Respondent moved to Panama in May 2006 to commence employment with National Asset Recovery Services (NARS) in Panama City. Respondent and petitioner began dating two months later, living separately until they purchased a home October 2007. On August 18, 2008, respondent gave birth to twin boys, Roque Jacinto Fernandez Bailey and Christian Robert Fernandez Bailey. Petitioner is the biological father, and his name is listed on the boys' birth certificates. Petitioner and respondent were engaged but have never married.

On May 15, 2009, respondent and the twin boys left Panama by airplane and traveled to the United States so that respondent could take a position with NARS in Cape Girardeau, Missouri. Almost one year later, on May 13, 2010, petitioner filed a Verified Complaint for Return of Children to Petitioner, pursuant to the Hague Convention on the Civil Aspects of

International Child Abduction (Hague Convention), Oct. 24, 1980, 19 T.I.A.S. No. 11670, and the International Child Abduction Remedies Act, 42 U.S.C. § 11601 *et seq*. Petitioner alleges in his complaint that respondent wrongfully removed the children from their habitual residence of Panama and wrongfully retained them in the United States in violation of Articles 3 and 5 of the Hague Convention. Respondent filed a motion to dismiss on June 28, 2010, arguing that petitioner's complaint should be dismissed for failure to state a claim upon which relief may be granted because petitioner never had a 'right of custody' under the language of the Hague Convention.

## II. Legal Standard of Motion to Dismiss

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (*quoting Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)). A complaint must be dismissed for failure to state a claim if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560 (2007) (abrogating the traditional "no set of facts" standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). A petitioner need not provide specific facts to support his allegations, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam), but "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008), *cert. denied*, 129 S.Ct. 222 (2008)(quoting *Twombly*, 550 U.S. at 555-56 & n.3).

In ruling on a motion to dismiss, a court must view the allegations of the complaint in the light most favorable to the petitioner. *Scheuer v. Rhodes*, 416 U.S. 232 (1974); *Kottschade v. City of Rochester*, 319 F.3d 1038, 1040 (8th Cir. 2003). Although a complaint challenged by a Rule 12(b)(6) motion does not need detailed factual allegations, a petitioner must still provide the grounds for relief, and neither "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" will suffice. *Twombly*, 550 U.S. at 555 (internal citations omitted). "To survive a motion to dismiss, a claim must be facially plausible, meaning that the 'factual content . . . allows the court to draw the reasonable inference that the respondent is liable for the misconduct alleged.'" *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010)(quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)). When determining the facial plausibility of a claim, the Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Id*. (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005). Finally, where a court can infer from those factual allegations no more than a "mere possibility of misconduct," the complaint must be dismissed. *Id*. (quoting *Iqbal*, 129 S.Ct. at 1950). With this plausibility standard in mind, the Court turns to an examination of respondent's motion to dismiss.

## III. Discussion

The United States and Panama are both signatories to the Hague Convention, adopted in 1980 to address the problem of child abduction under international law. The United States Congress implemented the provisions of the Hague Convention through the International Child Abduction Remedies Act (ICARA). Under the Hague Convention, children abducted in violation of "rights of custody" must be returned to the child's country of habitual residence,

unless certain exceptions apply. Art. 1, S. Treaty Doc. No. 99-11, at 7 (Treaty Doc.). The term "rights of custody" is defined under Article V of the Convention as "rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence." Hague Convention art. 5, T.I.A.S. No. 11670. "The key inquiry under the Hague Convention is whether a child has been wrongfully removed from the country of its habitual residence or wrongfully retained in a country other than that of its habitual residence." *Barzilay v. Barzilay*, 536 F.3d 844, 847 (8th Cir. 2008). Article III of the Convention defines what is considered a "wrongful" removal or retention of a child:

> The removal or the retention of a child is to be considered wrongful where—
> a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
> b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

Hague Convention art. 3, T.I.A.S. No. 11670.

"When deciding whether a child was wrongfully removed under [Article III], a court must thus determine when the removal or retention took place, what the habitual residence of the child was immediately prior to the removal, whether the removal or retention violated the petitioner's custody rights under the law of habitual residence, and whether the petitioner was exercising those rights at the time of the removal." *Barzilay*, 536 F.3d at 847. "The district court is to ascertain "only whether the removal or retention of a child was 'wrongful' under the law of the child's 'habitual residence,' and if so, to order the return of the child to the place of the 'habitual residence' for the court there to decide the merits of the custody dispute." *Id*.

It is undisputed that the children's habitual residence was Panama and that respondent removed the two boys from that country on May 15, 2009, and petitioner asserted in his

4

complaint that at the time of the removal or retention, he was actually exercising custody within the meaning of Articles III and V of the Hague Convention. Thus, the dispute in this case rests entirely on whether the removal violated petitioner's custody rights under Panamanian law at the time of the removal. Respondent argues in her motion to dismiss that the removal could not have been 'wrongful' because petitioner did not have any custody rights to assert. Respondent argues that under the Family Code of Panama[1], an unmarried father has no custodial rights until a court of law awards him custodial rights. To support this argument, respondent relies chiefly on articles 243 and 328 of the Family Code of Panama. Article 243 states: "The maternity is presumed for all legal effects when the act of labor and the identity of the son or daughter is abundantly proven." Family Code, Tit. II, Ch. II, Art. 243 [2]. Article 328 states: "In equal conditions, it is a general rule, that the sons or daughters will stay in the care of the parent with whom he or she was living at the time of the dispute, preferring the mother if they were in the company of both, unless in any case, for special reasons it is stated the contrary. If circumstances warrant, the custody may be granted even to a third party." Family Code, Tit. IV, Ch. III, Art. 328[3]. This Court is not persuaded, however, that either one of these articles would nullify the custody right of the father, much less presume that the biological father starts out with no rights of custody until a court awards it to him. Article 243 discusses finding a presumption of maternity, which is inapposite to a custody dispute where the biological relationship of the

---

[1] Código de la Familia de la República de Panamá

[2] La maternidad se presume para todos los efectos legales cuando se pruebe cumplidamente el hecho del parto y la identidad del hijo o hija.

[3] En igualdad de condiciones, se tendrá, como regla general, que los hijos o hijas queden al cuidado del progenitor en cuya compañía se hayan encontrado hasta el momento de producirse el desacuerdo, prefiriendo a la madre si se hallaban en compañía de ambos, y salvo, en todo caso, que por razones especiales se indique otra solución.

5

children and parents are not at issue. And Article 328, placed in the context of Chapter III of the Family Code, appears to provide terms of custody for issues to be decided "by the competent authority" and in "the absence of parental consent." Family Code, Tit. IV, Ch.III, Art. 327.

Petitioner argues that he has a *ne exeat* custody right under the Panamanian law "The Immigration Authorities, Title II, of Decree Law No. 3, Article 40." This provision provides:

> **Article 40** - The exit of the national territory of any person under the age, Panamanian or foreigner, under any migratory category, will be allowed in the following cases:
> 1. If the minor is accompanied by his father and mother.
> 2. If accompanied by a parent, and he has the written consent of the other parent, duly authenticated by a Notary Public.
> 3. If accompanied by a parent, and this has been approved by the Judge duly empowered, and in case of death of one parent, a certificate of death shall be added to the documentation.[4]

The Supreme Court held only two months ago that a *ne exeat* right is considered a "right of custody" under the language of the Hague Convention. *Abbott v. Abbott*, 130 S.Ct. 1983, 1990 (2010). A *ne exeat* right, the Court explained, is "the authority to consent before the other parent may take the child to another country." *Id*. at 1987. The Chilean law at issue in *Abbott* required the other parent's authorization before the children could be removed from the country, and the Supreme Court held that this *ne exeat* right was a "right of custody" within the meaning of the Hague Convention. *Id*. at 1990. Similarly, Article 40 requires the written consent of the

---

[4]Artículo 40. La salida del territorio nacional de toda persona menor de edad panameña o extranjera que se encuentre bajo cualquiera categoría migratoria, será permitida en los siguientes casos:

1. Si está acompañado de su padre y madre.
2. Si está acompañado por uno de sus progenitores, y éste cuenta con la autorización escrita del otro, debidamente autenticada por un notario público.
3. Si está acompañado por uno de sus progenitores y éste cuenta con la autorización del juez debidamente facultado para ello, y en caso del fallecimiento de uno de los progenitores, adicionará la certificación de defunción del ausente.

other parent—regardless of marital status— prior to the removal of children from Panama. Following the precedent of the *Abbott* case, Article 40 also is a *ne exeat* right that falls within the meaning of "right of custody" under the Hague Convention. Accepting as true the allegations contained in the petition and drawing all reasonable inferences in favor of the petitioner, the petition sets out "enough facts to state a claim to relief that is plausible on its face." Accordingly,

**IT IS HEREBY ORDERED** that respondent's motion to dismiss (#15) is **DENIED**.

Dated this ___14th___ day of July, 2010.

_____
UNITED STATES DISTRICT JUDGE