UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| ROQUES JACINTO FERNANDEZ, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:10CV00084 SNLJ |
| | ) | |
| CHRISTY NICOLE BAILEY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the merits of petitioner's Complaint for Return of Children to Petitioner Pursuant to 42 U.S.C. 11601 et seq. (The International Child Abduction Remedies Act), #1, after evidentiary hearing conducted on August 19, 2010. The parties have now filed proposed findings of fact and conclusions of law, and the matter is ripe for disposition.

The United States and Panama are both signatories to the Hague Convention, adopted in 1980 to address the problem of child abduction under international law and the United States Congress implemented the provisions of the Hague Convention through the International Child Abduction Remedies Act (ICARA). Under the Hague Convention, children abducted in violation of "rights of custody" must be returned to the child's country of habitual residence, unless certain exceptions apply. Art. 1, S. Treaty Doc. No. 99-11, at 7 (Treaty Doc.). The term "rights of custody" is defined under Article 5 of the Convention as "rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence." Hague Convention art. 5, T.I.A.S. No. 11670. "The key inquiry under the Hague Convention is whether a child has been wrongfully removed from the country of its habitual residence or wrongfully retained in a country other than that of its habitual residence." *Barzilay v. Barzilay*,

536 F.3d 844, 847 (8th Cir. 2008). Article 3 of the Convention defines what is considered a "wrongful" removal or retention of a child:

> The removal or the retention of a child is to be considered wrongful where—
> a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
> b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

Hague Convention art. 3, T.I.A.S. No. 11670.

"When deciding whether a child was wrongfully removed under [Article III], a court must thus determine when the removal or retention took place, what the habitual residence of the child was immediately prior to the removal, whether the removal or retention violated the petitioner's custody rights under the law of habitual residence, and whether the petitioner was exercising those rights at the time of the removal." *Barzilay*, 536 F.3d at 847. "The district court is to ascertain "only whether the removal or retention of a child was 'wrongful' under the law of the child's 'habitual residence,' and if so, to order the return of the child to the place of the 'habitual residence' for the court there to decide the merits of the custody dispute." *Id*.

This Court makes the following findings of fact, all of which are uncontested:

Petitioner Roque Jacinto Fernandez is a citizen of Panama and respondent Christy Nicole Bailey is a citizen of the United States. Respondent moved to Panama in May 2006 to commence employment with National Asset Recovery Services (NARS) in Panama City. Respondent and petitioner began dating within a few weeks, and they lived together most of the time, eventually purchasing a home together in October 2007. On August 18, 2008, respondent

gave birth to twin boys, Roque Jacinto Fernandez Bailey and Christian Robert Fernandez Bailey. Petitioner is the biological father, and his name is listed on the boys' birth certificates. Petitioner and respondent were engaged but have never married. On May 15, 2009, respondent and the twin boys left Panama without petitioner's knowledge or consent and traveled to the United States where respondent has taken a position with NARS in Cape Girardeau, Missouri. Respondent and the boys now reside in Cape Girardeau. Panama was the country of the children's habitual residence at the time of their removal.

Respondent's first defense is that petitioner had no "rights of custody" as that term is used under the Hague Convention, and that even if he did have rights of custody, he was not actually exercising those rights. This matter was addressed at length in this Court's Memorandum and Order, #23, denying respondents Motion to dismiss for Failure to State a Claim, #15, and this Court reaffirms and incorporates herein the analysis and the holding in that order. Without repeating that analysis and holding altogether, this Court finds and concludes that petitioner has a *ne exeat* custody right under Panamanian law, "The Immigration Authorities, Title II, of Decree Law No. 3, Article 40, that falls within the meaning of "right of custody" under the Hague Convention. Specifically, this Court finds and concludes that the said law gave petitioner the right to withhold his consent for respondent to remove the children from Panama, and that petitioner would have exercised his right to withhold consent but for the fact that the children were removed without his knowledge.

For the foregoing reasons, this Court finds and concludes that the removal of the children from Panama was wrongful under the laws of Panama, which was the children's habitual residence. Accordingly, the Hague Convention requires this Court to order the immediate return

gave birth to twin boys, Roque Jacinto Fernandez Bailey and Christian Robert Fernandez Bailey. Petitioner is the biological father, and his name is listed on the boys' birth certificates. Petitioner and respondent were engaged but have never married. On May 15, 2009, respondent and the twin boys left Panama without petitioner's knowledge or consent and traveled to the United States where respondent has taken a position with NARS in Cape Girardeau, Missouri. Respondent and the boys now reside in Cape Girardeau. Panama was the country of the children's habitual residence at the time of their removal.

Respondent's first defense is that petitioner had no "rights of custody" as that term is used under the Hague Convention, and that even if he did have rights of custody, he was not actually exercising those rights. This matter was addressed at length in this Court's Memorandum and Order, #23, denying respondents Motion to dismiss for Failure to State a Claim, #15, and this Court reaffirms and incorporates herein the analysis and the holding in that order. Without repeating that analysis and holding altogether, this Court finds and concludes that petitioner has a *ne exeat* custody right under Panamanian law, "The Immigration Authorities, Title II, of Decree Law No. 3, Article 40, that falls within the meaning of "right of custody" under the Hague Convention. Specifically, this Court finds and concludes that the said law gave petitioner the right to withhold his consent for respondent to remove the children from Panama, and that petitioner would have exercised his right to withhold consent but for the fact that the children were removed without his knowledge.

For the foregoing reasons, this Court finds and concludes that the removal of the children from Panama was wrongful under the laws of Panama, which was the children's habitual residence. Accordingly, the Hague Convention requires this Court to order the immediate return

of the children to Panama.

However, respondent raises a second defense under Article 13(b) of the Hague Convention, which is that even if there was a wrongful removal of the children, the Court need not order the return of the children where "there is a grave risk" that the return of the children "would expose [them] to physical or psychological harm or otherwise place [them] in an intolerable situation." In making the additional findings of fact to address this defense, this Court notes that although this matter is not an action for child custody, the parties devoted the bulk of their evidentiary presentations to matters that are much more pertinent to a future child custody determination rather than the limited issue at hand. This Court's findings then, pertain solely to the question of whether there is a grave risk to the children.

In support of this defense, respondent introduced evidence that petitioner was convicted of felony burglary and stealing of firearms some 14 years ago when he was living in Florida with his parents and family, and that petitioner served a short prison sentence for those offenses and was then deported back to Panama. However, the Court finds that these offenses occurred when petitioner was a juvenile (though he was certified to stand trial as an adult), that petitioner has been rehabilitated, that he has had no serious law violations since that time, that he has become a responsible citizen, and as a result, the offenses have no bearing on the issue of risk to the children.

The only other focus of respondent's defense is her introduction of evidence of a few incidents during the course of the parties' nearly three year relationship in which petitioner became violent to others. This Court finds that these incidents primarily involved fist fights instigated by petitioner while drinking because he was jealous about respondent's contact with

other men.  On two occasions, however, he became violent with respondent, but she was not seriously harmed, and they reconciled both times thereafter.  The Court also finds that petitioner was emotionally and psychologically abusive to respondent from time to time, even though they were engaged to be married.

Despite these concerns, this Court finds that petitioner was never violent, abusive or neglectful to the children, that he loves his children, that he deeply cares for their welfare, and that he is ready, able and most willing to provide for them in a responsible manner.  Furthermore, the evidence of petitioner's misconduct does not come close to the evidence that courts have deemed sufficient to constitute a grave risk, as in *Walsh v. Walsh*, 221 F.3d 204 (1st Cir. 2000) or *Simcox v. Simcox*, 511 F.3d 594 (6th Cir. 2007), cited by respondent.  Accordingly, the Court finds that there is not a serious risk, much less a grave risk, that the children would be exposed to physical or psychological harm or otherwise placed in an intolerable situation when they are returned to petitioner in Panama.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED, that an Order Directing Minors to Return to Country of Habitual Residence shall be entered, directing that the minor children of the parties be returned to Panama forthwith and that such return not be impeded by respondent, or anyone having actual knowledge of this Order and Judgment, and that any federal or State officer who is presented with a copy of the Order enforce the Order without exception.

Although petitioner has submitted a proposed order specifying how and with whom the children are to be returned to Panama, respondent has not done so.  However, respondent is granted six days, through Tuesday, September 7, 2010, to file her own proposal for the transport of the children.

**SO ORDERED** this 1st day of September, 2010.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE